91 F.3d 316
 152 L.R.R.M. (BNA) 2952, 132 Lab.Cas. P 11,626
 Tim SCHERMERHORN; Corine Scott; Cecile Clue; Clarence
Little; Frank Neal Whitted, Plaintiffs-Appellees,
v.
LOCAL 100, TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO,
Defendant-Counter-Claimant Counter-Defendant-Appellant,
Sonny Hall; Herbert Jones; Tony Dandridge; Dennis
Williams; Martin Muller; Robert Littles;
Jacqueline McGowan; Joseph Continanzi,
Defendants-Counter-Claimants
Counter-Defendants.
 Nos. 1441, 1651, Dockets 95-7928, 95-9031.
 United States Court of Appeals,
Second Circuit.
 Argued April 8, 1996.
Decided July 29, 1996.
 
 Malcolm A. Goldstein, O'Donnell, Schwartz, Glanstein & Rosen, New York City, for Defendant-Counter-Claimant Counter-Defendant-Appellant.
 Arthur Z. Schwartz, Kennedy Schwartz & Cure, New York City, for Plaintiffs-Appellees.
 Before: ALTIMARI and KEARSE, Circuit Judges, and JOHNSON, District Judge.*
 ALTIMARI, Circuit Judge:
 
 
 1
 The Plaintiffs-Appellees are workers and elected officials of their local who tried to bring a new direction to their union. In response to the Plaintiffs' reform efforts the Defendants, who are also union officers, used the full weight of their positions to obstruct the Plaintiffs' efforts, eventually trying them on charges of disorder and issuing union reprimands against them. As a result of the officers' actions, Plaintiffs commenced two actions in the district court asserting that the officers' actions violated several provisions of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA" or "Act"), 29 U.S.C. §§ 401-531 (1994). After a jury trial and a bench trial of the two cases respectively, the jury and district court concluded that the Defendants' conduct violated sections 101(a)(2) and (a)(5) of the LMRDA, 29 U.S.C. § 411(a)(2) and (a)(5). The district court issued two judgments which, inter alia, (1) granted the Plaintiffs the jury's award of nominal damages, (2) granted the Plaintiffs permanent injunctive relief, and (3) voided the union reprimands. See Schermerhorn v. Hall, 150 L.R.R.M. (BNA) 2238, 1995 WL 608304 (S.D.N.Y.1995), and Schermerhorn v. Local 100, Transport Workers Union of Am., 150 L.R.R.M. (BNA) 2246, 1995 WL 677092 (S.D.N.Y.1995). Because the district court's judgments are fully supported by the record and are proper as a matter of law, we affirm.
 
 Background
 A. Underlying Events
 
 2
 The Defendant-Appellant Local 100, Transport Workers Union of America ("Local 100" or "Union") represents over 30,000 employees of the New York City Transit Authority ("TA") and the Manhattan and Bronx Surface Transit Operating Authority ("MABSTOA"). As an affiliated local of the Transport Workers Union of America ("TWU"), Local 100 is governed by TWU's constitution as well as its own by-laws. Because of its enormous membership, Local 100 is divided into 15 "Divisions" which reflect the subway and busline operating divisions of the TA and MABSTOA. Each Division must have a minimum of 100 members. Some Divisions are further subdivided into "Sections."
 
 
 3
 The Plaintiffs-Appellees Tim Schermerhorn ("Schermerhorn"), Corine Scott ("Scott"), Cecile Clue ("Clue"), Clarence Little ("Little") and Frank Neal Whitted ("Whitted") (collectively "Plaintiffs") at all pertinent times were members of Local 100 holding elected office in the Union: Schermerhorn and Scott are Vice-Chairpersons of the Train Operators Division; Clue and Whitted are Local 100 Executive Board members, elected to that office by the Conductor/Tower Division; and Little is a Local 100 Executive Board member, elected to that office by the Train Operators Division. The Plaintiffs are also members of a reform caucus within Local 100 known as "New Directions." Founded in 1986 by rank-and-file members of Local 100 who believed that their Union was in need of reform, New Directions published newsletters and fielded candidates for offices within the Union. In the December 1991 elections, candidates running on the New Directions slate won ten of Local 100's thirty-three Executive Board positions, as well as other officer positions in several of the Divisions.
 
 
 4
 The principal events underlying the instant case concern: (1) the Plaintiffs' efforts to gain admittance to Division and Section meetings during 1991-1992 in order to discuss various matters, including obtaining a better bargaining agreement; and (2) the actions undertaken by other Union officials to prevent the Plaintiffs from appealing to a wider audience among union members.
 
 
 5
 Between January and May of 1991, several of the Plaintiffs tried to enter various Division and Section meetings in order to hand out flyers or raise issues of concern to the Union, but were precluded from doing so by the presiding chairpersons of the respective Divisions and Sections. In response to the Plaintiffs' efforts to enter meetings, on May 23, 1991, Local 100's Executive Committee issued a written policy which limited attendance at Division and Section meetings to members of the Division or Section that was meeting, unless the meeting's participants voted to invite a member not in that particular Division or Section to a subsequent meeting to speak about a particular subject (the "Attendance Policy"). Around the same time, the Executive Committee also issued a policy providing that: (1) the distribution of flyers to Union members was limited to the placement of flyers on a table outside of Division or Section meetings; (2) members had to request that a Union officer place the flyers on the table; and (3) the Union officer could refuse to place any flyer on the table that did not relate to the operation of Local 100 (the "Flyer Distribution Policy"). Both policies were subsequently adopted by the Local's Executive Board.
 
 
 6
 In light of plaintiff Whitted's repeated efforts to gain access to Division and Section meetings both before, as well as after, the Union's adoption of the two Policies, he was charged by Union officials with disrupting meetings and was called to appear before a trial committee to answer the charges. Trial committees are Local 100's disciplinary bodies. According to Articles XIX and XX of the TWU Constitution, a union member may charge another member with violating the TWU constitution or of engaging in conduct unbecoming a TWU member. Those charges are then either rejected by the Local Executive Board as improper, or accepted and referred to trial. Trials are conducted by a trial committee of three members elected by the Executive Board. After the hearing, the trial committee reports its findings to the Executive Board, which can then take such action as it deems proper.
 
 
 7
 For example, Whitted was charged on March 29, 1991 by Dennis Williams ("Williams"), the chairperson of the Tower Section, and Martin Muller ("Muller"), the former Vice-Chairperson of the Tower Section, with disrupting a February 27, 1991 Tower Section meeting. According to Whitted, Williams unsuccessfully attempted to prevent him from entering the meeting; once Whitted was inside, Williams refused to recognize him as a speaker or permit a motion from the floor to allow Whitted to speak. After a hearing on the charges, the Executive Board issued a warning to Whitted.
 
 
 8
 Several months later, on September 5, 1991, Whitted was again charged with disrupting an August 14, 1991 meeting of the Conductor/Tower Division by Robert Littles ("Littles"), the Division's former Chairperson. A trial committee found that Whitted and Littles were equally at fault, and recommended that the Union's then-Vice-President speak with both Whitted and Littles. During this same period in which he faced repeated charges, Whitted sought several times to bring charges against Littles and Williams for refusing to let him speak at meetings. Each time, however, the Executive Board rejected Whitted's charges.
 
 
 9
 Following the Union-wide elections in December of 1991, on January 28, 1992, Local 100's leadership entered into a tentative three year bargaining agreement with the TA and MABSTOA subject to ratification by the Union membership. New Directions immediately commenced a campaign to persuade Union members to reject the tentative agreement. In support of that goal, New Directions held a rally against ratification on February 12, 1992. After the rally hundreds of union members marched from Manhattan to Brooklyn and entered a meeting of the Conductor/Tower Division to challenge the leadership concerning the tentative bargaining agreement. As a result of the presence of members from other Sections of Local 100, the meeting was adjourned.
 
 
 10
 According to the Plaintiffs, on February 19, 1992, a motion was made at the Train Operators Division meeting to hold a special meeting open to all union members, pursuant to the Local's by-laws, to discuss the tentative agreement and any alternatives. Although the motion was properly passed to hold the special meeting on March 25, 1992, Local 100 President Sonny Hall ("Hall") and Vice President Herbert Jones ("Jones") posted notices cancelling the meeting. Despite Hall's and Jones's actions to counteract New Directions's opposition to the agreement, on March 18, 1992 the membership of Local 100 rejected the tentative agreement by a margin of approximately two to one.
 
 
 11
 As a result of their actions opposing ratification, on March 24, 1992, Schermerhorn, Scott, Whitted and Clue were charged by Vice-President Jones with, inter alia, bringing non-Conductor/Tower Division members of Local 100 to the Conductor/Tower Division meeting held on February 12, 1992, and "kidnapping," Tony Dandridge ("Dandridge"), the Chairperson of the Conductor/Tower Division, and Joseph Continanzi ("Continanzi"), the Local's staff representative, by refusing to allow them to leave the Union hall upon adjournment of that meeting. Dandridge filed similar charges on March 25, 1992, against Scott, Whitted, Clue, and Little, alleging, inter alia, that they "storm[ed]" the Conductor/Tower Division meeting on February 12, 1992, engaged in abusive language, and disturbed the peace. On March 27, 1992, Jones also charged Schermerhorn, Scott, and Little with violating the Local's by-laws by supporting the February 19, 1992 motion calling for a special meeting, and with making malicious accusations against him and his staff. These charges by Jones and Dandridge were referred to a trial committee, and tried during sessions held in November and December of 1992, and January of 1993. At the conclusion of the trial, the trial committee recommended that Whitted, Clue, and Scott be reprimanded. The recommendation was adopted by the Local's Executive Board.
 
 
 12
 Finally, from April through June of 1992, the Plaintiffs brought repeated charges against several Union officials for disregarding their duties, and the officials continued filing counter-charges against the Plaintiffs for disrupting meetings and bringing personal attacks upon them.
 
 B. Proceedings Before The District Court
 
 13
 On June 26, 1993, the Plaintiffs commenced an action against Local 100 and Local 100 officers Hall, Jones, Dandridge, Williams, Muller, Littles, as well as Continanzi and Jaqueline McGowan ("McGowan"), the recording secretary of the Conductor/Tower Division (collectively with Local 100 the "defendants"). The amended complaint principally alleges that: (1) the Union's adoption of the Attendance and Flyer Distribution policies, (2) the defendants' attempts to exclude the Plaintiffs and their literature from meetings by enforcing these policies, and (3) the bringing of charges against them, restrained the Plaintiffs' right to meet and assemble freely with other union members and express their views regarding union-related business in violation of sections 101(a)(2) and 609 of the LMRDA, 29 U.S.C. §§ 411(a)(2) and 529. The Plaintiffs sought compensatory and punitive damages, as well as various injunctive relief.
 
 
 14
 In their answer, the defendants denied the allegations and asserted two counterclaims, one against plaintiff Scott for assault and the other against the Plaintiffs for false imprisonment as a result of preventing the defendants from leaving the Union hall upon the adjournment of the February 12, 1992, Conductor/Tower Division meeting. Each counterclaim sought $250,000 in damages.
 
 
 15
 After issue was joined, the Plaintiffs attempted to add an additional cause of action to their original complaint, alleging that their due process rights were denied in violation of section 101(a)(5) of LMRDA, 29 U.S.C. § 411(a)(5), during the trial proceedings of the March 1992 charges brought against them by Jones and Dandridge. According to the Plaintiffs, they were neither allowed to hear nor cross-examine the witnesses against them. The district court denied the motion to amend the complaint. Consequently, the Plaintiffs commenced a second action, naming only Local 100 as a defendant and asserting a claim that their due process rights under the LMRDA were violated. The complaint sought injunctive relief voiding the reprimands and enjoining the objectionable procedures employed by the trial committee.
 
 
 16
 The district court consolidated the two actions. The first action was tried before a jury. While the jury was deliberating, the district court conducted a bench trial of the second action. With regard to the first action, the jury returned a special verdict finding, inter alia, that: (1) the Attendance and Flyer Distribution Policies were not reasonably related to the protection of Local 100 as an institution, (2) many of the defendants' attempts at excluding the Plaintiffs from meetings and their lodging of charges against the Plaintiffs interfered with the Plaintiffs' rights to meet and assemble freely with other union members, (3) some of the charges lodged by the defendants were motivated by a desire to retaliate against the Plaintiffs for filing charges against them, and (4) much of the defendants' conduct, including the posting of notices cancelling the March 25, 1992 special meeting, was part of a scheme to suppress dissent in Local 100. Despite these findings, the jury awarded each of the Plaintiffs only one dollar in nominal damages. The jury also determined that the Plaintiffs did not unlawfully imprison the defendants on February 12, 1992, and that plaintiff Scott did not assault defendant McGowan on April 19, 1992.
 
 
 17
 Based on the jury's findings and its own supplemental findings, the district court concluded that: (1) Local 100's adoption of the Attendance and Flyer Distribution Policies violated the Union members' rights under section 411(a)(2) to free expression and assembly; (2) both the defendants' posting of notices cancelling the March 25, 1992 special meeting and the charges brought against the Plaintiffs that were retaliatory in nature and/or based on a scheme to suppress dissent, were in violation of section 411(a)(2); and (3) the Plaintiffs were not required to exhaust additional internal union procedures prior to seeking relief in the district court. Accordingly, the district court granted the jury's award of nominal damages to the Plaintiffs. It also permanently enjoined the defendants from further enforcing the Attendance and Flyer Distribution Policies, and from engaging in any further conduct suppressing dissent or preventing union members from legally meeting with each other.
 
 
 18
 With regard to the second action concerning the Plaintiffs' due process claims, the district court principally concluded that the trial committee's procedures failed to afford the Plaintiffs a "full and fair hearing" as required by section 411(a)(5), because the Plaintiffs were not allowed to confront and cross-examine the witnesses who testified against them. The district court also concluded that the Plaintiffs had not knowingly waived their right to confront and cross-examine the witnesses. Further, the district court determined that the reprimands issued to three of the Plaintiffs were "discipline" within the meaning of section 411(a)(5), and that, as such, were void because they did not result from a full and fair hearing as required by that section. Finally, the district court concluded that the Plaintiffs did not have to exhaust further Union internal procedures before raising the due process claims in the district court.
 
 
 19
 Local 100 now appeals the district court's rulings.
 
 Discussion
 
 20
 On appeal, Local 100 contends that the district court erred: (1) in its charge to the jury regarding the issue of a "scheme to suppress dissent;" (2) in its charge to the jury on the issue of the individual Union officers' liability for bringing internal Union charges seeking punishment of Union members for their speech and conduct; (3) in finding that the Plaintiffs need not exhaust internal Union grievance procedures; and (4) in ruling that the reprimands which three of the Plaintiffs received were "discipline" within the meaning of the LMRDA.
 
 
 21
 We review the district court's factual findings for clear error and its conclusions of law de novo. See United States v. Coppola, 85 F.3d 1015, 1019 (2d Cir. 1996).
 
 1. The District Court's Jury Instructions
 
 22
 A jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it does not adequately inform the jury of the law. See Folger Adam Co. v. PMI Industries, 938 F.2d 1529, 1533-34 (2d Cir.), cert. denied, 502 U.S. 983, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991). As an appellate court, this Court need only "satisfy itself that [the] instructions, taken as a whole and viewed in light of the evidence, show no tendency to confuse or mislead the jury as to principles of law which are applicable." See Norfleet v. Isthmian Lines, Inc., 355 F.2d 359, 362 (2d Cir.1966); accord Anderson v. Branen, 17 F.3d 552, 556 (2d Cir.1994). Thus, a jury instruction will be deemed adequate if "the charge, taken as a whole, 'is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it.' " Care Travel Co. v. Pan American World Airways, 944 F.2d 983, 996 (2d Cir.1991) (quoting Fernandez v. Fitzgerald, 711 F.2d 485, 487 (2d Cir.1983) (quoting Oliveras v. United States Lines Co., 318 F.2d 890, 892 (2d Cir.1963))). Moreover, except under certain limited circumstances, such as reviewing the district court's grant of a motion for judgment as a matter of law setting aside a verdict, the jury's findings of fact can not be reviewed by this Court in light of the Seventh Amendment's prohibition that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 358-59, 82 S.Ct. 780, 782, 7 L.Ed.2d 798 (1962).
 
 
 23
 Local 100 contends that the district court erred in its jury instructions because it (a) gave the wrong standard for determining whether a "scheme to suppress dissent" existed among Union officials, and (b) did not adequately separate the individual Union officers' liability for bringing internal charges against the Plaintiffs based on their speech, from the lack of any such liability based on the Plaintiffs' alleged disorderly conduct.
 
 A. Scheme to Suppress Dissent
 
 24
 Section 101(a)(2) of the LMRDA provides that, with respect to freedom of speech and assembly:
 
 
 25
 Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of the meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
 
 
 26
 29 U.S.C. § 411(a)(2). As we have previously explained, section 411(a)(2) "is intended to ensure that unions use democratic processes," and, consequently, "grant[s] every member of a labor organization ... rights of freedom of speech and assembly...." Johnson v. Kay, 860 F.2d 529, 536-37 (2d Cir.1988).
 
 
 27
 Although the LMRDA's rights of association and expression are limited to union members acting as members and not to union officers acting solely in their official capacity as officers, we have held that the silencing of a union officer may threaten the freedom of members to speak out where "a scheme to suppress dissent" exists among union officials. See id.; see also Franza v. International Broth. of Teamsters, Local 671, 869 F.2d 41, 45 (2d Cir.1989). A "scheme to suppress dissent" exists when "as a result of established union history or articulated policy ... a purposeful and deliberate attempt [is made] by union officials to suppress dissent within the union." Schonfeld v. Penza, 477 F.2d 899, 904 (2d Cir.1973); see also Cotter v. Owens, 753 F.2d 223, 230 (2d Cir.1985).
 
 
 28
 In order for the jury below to determine whether the defendants' actions amounted to a "scheme to suppress dissent" in Local 100, the district court instructed the jury, in pertinent part, that:
 
 
 29
 A plaintiff may prove that an otherwise lawful act by a union official violated the LMRDA, where the complained of act was part of a series of oppressive acts by the union leadership that directly threatened the freedom of members to speak out. In order to prevail on such a claim, a plaintiff must prove that the complained of act was not merely an isolated act of retaliation, but was part of a purposeful and deliberate attempt to suppress dissent within the union.
 
 
 30
 ... In order to prevail on their purposeful scheme theory, plaintiffs must show by clear and convincing evidence that the union action was part of a purposeful and deliberate attempt by union officials to suppress dissent within the union.
 
 
 31
 Local 100 contends that the district court's instructions to the jury do not state a clear standard for the jury to follow, and that the district court erred by failing to adopt the defendants' proposed instruction which was based on a conspiracy standard. We find Local 100's contention meritless.
 
 
 32
 The district court correctly instructed the jury as to the applicable standard of liability; namely, that to prevail on their claim, the Plaintiffs must show by "clear and convincing evidence" that the union action was part of a purposeful and deliberate attempt by union officials to suppress dissent within the union. See Franza, 869 F.2d at 45. Moreover, the district court made clear in its instruction that an issue existed as to whether the defendants' actions were isolated or related to each other and that any "scheme to suppress dissent" necessarily must involve a concerted effort among union officials. Taken as a whole, we conclude that the instructions were neither misleading nor confusing. The instructions adequately reflected the pertinent law and enabled the jury to decide the issues intelligently.
 
 B. Interplay of Conduct and Speech
 
 33
 This Court has interpreted the free speech and assembly provisions of section 411(a)(2) and the provisions of 29 U.S.C. § 529 (a union may not "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of [the Act]"), as prohibiting unions from disciplining a member for statements made at union meetings which criticize the performance of union officers, even if such statements are libelous. See Petramale v. Local No. 17 of Laborers Int'l Union, 736 F.2d 13, 17 (2d Cir.), cert. denied, 469 U.S. 1087, 105 S.Ct. 593, 83 L.Ed.2d 702 (1984); see also Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 354-55, 109 S.Ct. 639, 644-45, 102 L.Ed.2d 700 (1989) (intra-union charge brought to punish member for engaging in protected speech activities prohibited). Thus, while unions may impose reasonable rules on a member's speech in the interest of preventing the disruption of union meetings, see Petramale, 736 F.2d at 17, a union may not validly discipline a member for accusations he or she made against union officers. See Salzhandler v. Caputo, 316 F.2d 445, 446 (2d Cir.) (under section 411(a)(2), a member has a right to make public statements about the operation and management of his or her union and about other union officials without reprisal from the union or union officials), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963).
 
 
 34
 Moreover, where a union's discipline involves charges that intertwine allegations of disruptive conduct and protected speech, the discipline "as a whole" is invalid under the LMRDA. See Petramale, 736 F.2d at 16, 18. Finally, "a union official who aids abets, instigates, or directs a wrongful use of union power to deprive a member of his rights under § 101 may be held liable under § 102[.]" Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, 605 F.2d 1228, 1246-7 (2d Cir.1979), cert. denied, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980).
 
 
 35
 In order to find the defendant-officers liable under the LMRDA, the district court instructed the jury that:
 
 
 36
 The bringing of an intraunion charge is also prohibited where the intraunion charge was brought with an improper motive....
 
 
 37
 In this case, the defendants are sued as union officers who aided, abetted, instigated or directed a wrongful use of union power to deprive a member of his or her rights. Defendants are not being sued because they are officers who brought charges, but because they allegedly used their positions to bring charges which were designed to chill free speech rights.
 
 
 38
 If you find that a defendant abridged a plaintiff's freedom of speech or if you find that a defendant abused the power of his or her union office ... then you must find for the plaintiff....
 
 
 39
 This means that where discipline is sought against a union member for both speech and conduct as part of one charge, in other words, where such allegations are intertwined, the charged party's free speech rights under LMRDA have been violated.
 
 
 40
 Local 100 contends that this instruction made it impossible for the jury to accurately weigh the conduct and motives of the individual defendants, because it mixes conduct and speech. According to the Union, such a jury charge would allow any dissident officer to file charges with impunity so long as the dissident claims he or she is defending his or her right to free speech. We disagree.
 
 
 41
 The district court's instruction seeks only to address actions by union officers which abridge free speech rights, not actions which are motivated by the desire to protect the union as an institution. The instruction is carefully worded and designed to properly measure the impact of the defendant-officers' actions on the Plaintiffs' exercise of their rights; namely--did the defendants aid, abet, instigate, or direct the wrongful use of union power against the Plaintiffs in reprisal of the Plaintiffs' exercise of their rights to speech and assembly. As with the earlier instruction, the instruction correctly reflects the pertinent law, is not confusing or misleading, and enabled the jury to decide the issue intelligently.
 
 2. Exhaustion of Union Remedies
 
 42
 Local 100 contends that the district court erred by declining to charge the jury that the Plaintiffs' claims may be barred by the failure to exhaust all internal Union remedies with respect to several issues the Plaintiffs raised in this litigation. The Union's contention is without merit.
 
 
 43
 Section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), provides that a union member may be required "to exhaust reasonable hearing procedures" within the union before "instituting legal or administrative proceedings against such organizations or any officer thereof," provided that a four month lapse of time has not been exceeded in exhausting the procedures. It is clear, however, that requiring exhaustion of intra-union remedies before commencing an action in the federal court is a matter of the court's discretion, regardless of the four month period delineated in the statute. See Johnson v. General Motors, 641 F.2d 1075, 1079 (2d Cir.1981) (" '[T]he public tribunals whose aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union.' ") (quoting National Labor Relations Board v. Industrial Union of Marine & Shipbuilding Workers, 391 U.S. 418, 426, 88 S.Ct. 1717, 1723, 20 L.Ed.2d 706 (1968) (adding emphasis)). District courts have discretion as to whether or not to require exhaustion of internal union procedures based upon "(i) 'whether union officials are so hostile to the employee' as to eliminate the chance of a fair hearing; (ii) the adequacy of the internal procedures; or (iii) whether exhaustion would unreasonably delay the opportunity to obtain a judicial hearing on the merits of the employee's claim." Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154 (2d Cir.1994) (quoting Clayton v. International Union, United Auto., Aerospace and Agr. Implement Workers of America, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981)). Contrary to the defendants' contention, exhaustion is a question for the court to determine and does not require a jury instruction.
 
 
 44
 With respect to the internal union charges in the instant case, in every instance where the district court found an intra-union charge to violate section 411(a)(2), more than four months of union hearing procedures was exhausted. Additionally, the district court found that there was no avenue of appeal for members to challenge the Attendance the Flyer Distribution Policies, and the cancellation of the March 19, 1992 United Motormen's Division meeting. The finding is clearly supported by the record--the "Appeals" section of the TWU constitution, Article XXIII, provides only for appeals "in any matter relating to the application of this Constitution or the By-Laws of the Local Union"--and therefore justifies the district court's disregard of exhaustion. See Clayton, 451 U.S. at 693, 101 S.Ct. at 2097 (exhaustion of union remedies is not required when an internal union procedure cannot provide the remedy sought under the LMRDA).
 
 
 45
 Accordingly, because more than four months had elapsed in the Plaintiffs' pursuit of intra-union remedies and there was no avenue to seek redress for several of the injuries complained of, the district court did not abuse its discretion in declining to require that the plaintiffs exhaust all Union remedies.
 
 
 46
 3. The Reprimands Constitute "Discipline"
 
 
 47
 Finally, the Union contends that the district court erred when it held that reprimands issued to three of the Plaintiffs constituted "discipline" within the meaning of § 101(a)(5) of the LMRDA. This contention is equally unpersuasive.
 
 
 48
 Section 101(a)(5) of the LMRDA provides that:
 
 
 49
 No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.
 
 
 50
 29 U.S.C. § 411(a)(5). The term "otherwise disciplined" has been defined "to denote only punishment authorized by the union as a collective entity to enforce its rules .... [and] refers only to actions 'undertaken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership.' " Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 91, 110 S.Ct. 424, 439, 107 L.Ed.2d 388 (1989) (quoting Miller v. Holden, 535 F.2d 912, 915 (5th Cir.1976)). The term "impl[ies] some sort of established disciplinary process rather than ad hoc retaliation by individual union officers." Id. at 91-92, 110 S.Ct. at 439.
 
 
 51
 This Court has described the term "otherwise disciplined" on a number of occasions. We have defined such discipline as the "act of self-protection .... taken by the union in the interest of promoting the welfare of the group," Detroy v. American Guild of Variety Artists, 286 F.2d 75, 81 (2d Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961), or as "official union conduct that has the purpose and effect of punishing a member," Galke v. Duffy, 645 F.2d 118, 120 (2d Cir.1981). We have additionally stated that punishment of members by persons in authority where it was "feasible" for the Union to comport with due process could arguably be characterized as "discipline." See Morrissey v. National Maritime Union of Am., 544 F.2d 19, 25-26 (2d Cir.1976).
 
 
 52
 In the instant case, the reprimands issued to the plaintiffs were the product of hearings conducted by a trial committee and of a recommendation adopted by the Local 100 Executive Board. The reprimands were not instances of ad hoc retaliation. Rather, they were self-protective acts purportedly designed to promote the Union's welfare. Accord Local Union No. 1056 v. Greater Fox River Valley Dist. Council, 817 F.Supp. 1434, 1442 (E.D.Wis.1993) ("A reprimand is not merely a neutral report; it formally expresses disapproval of a person's behavior and amounts to an instruction that the behavior not be repeated. That's discipline."). Moreover, while the district court found that the trial committee's proceedings did not comport with due process, there is no doubt that such procedures as due process requires were "feasible" within the Union's practiced disciplinary proceedings.
 
 
 53
 In sum, because the reprimands constituted official union conduct that had the purpose and effect of punishing the plaintiff union members, it cannot be said that the district court erred in holding the reprimands issued to the plaintiffs constituted "discipline" within the meaning of § 101(a)(5) of the LMRDA.
 
 CONCLUSION
 
 54
 For the foregoing reasons, the judgments of the district court in Schermerhorn v. Hall and Schermerhorn v. Local 100, Transport Workers Union of America, are affirmed.
 
 
 
 *
 Honorable Sterling Johnson, Jr., Judge, United States District Court for the Eastern District of New York, sitting by designation